IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CAROLYN MAE LUJAN,

       Plaintiff,

vs.                                                                                                 1:22-cv-00566-LF

KILOLO KIJAKAZI, Acting Commissioner
of the Social Security Administration,

       Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on plaintiff Carolyn Mae Lujan's Motion to Remand to Agency with Supporting Memorandum (Doc. 15), which was fully briefed on June 8, 2023. *See* Docs. 20, 24, 25. The parties consented to my entering final judgment in this case. Docs. 3, 5, 6. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") failed to support his assessment of two medical opinions with substantial evidence. I therefore GRANT Ms. Lujan's motion and remand this case to the Commissioner for further proceedings consistent with this opinion.

**I.**     **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116,

---

[1] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481, as it is in this case.

1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process.  20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  At the first four steps of the evaluation process, the claimant must show:  (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work."  20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.  If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience.  *Id.*

### III. Background and Procedural History

Carolyn Mae Lujan is a 63-year-old woman with a high-school education who lives with her husband in Rio Rancho, New Mexico.  AR 90, 262, 1103.[3]  Ms. Lujan has worked assembling electronics and as a representative in a bank's call center.  AR 246.  Ms. Lujan filed an application for Disability Insurance Benefits ("DIB") on January 5, 2018, alleging disability since March 1, 2013, due to a tib-fib fracture, chronic foot pain, PTSD, kidney disease, a herniated disc in her neck, arthritis of her lower back, spinal stenosis, two Tarlov cysts,

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] Documents 12-3 through 12-15 comprise the sealed Administrative Record ("AR").  When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

degenerative disc disease and a bone spur in her low back, obstructive sleep apnea, osteopenia, and gastroparesis. AR 89–91. Although she applied in 2018, Ms. Lujan's date last insured is December 31, 2013. AR 89. The Social Security Administration ("SSA") denied her claim initially and on reconsideration. AR 89–109. Ms. Lujan requested a hearing before an ALJ. AR 143. On January 30, 2019, ALJ Ann Farris held a hearing. AR 63–88. ALJ Farris issued her unfavorable decision on April 24, 2019. AR 110. The Appeal's Council denied Ms. Lujan's request for review on April 6, 2020. AR 1. Ms. Lujan filed a complaint in this Court on June 4, 2020; the Commissioner voluntarily moved to remand the matter to the SSA, and on May 26, 2021, the Court remanded. AR 1149–55. On June 10, 2022, ALJ Michael Leppala held a remote video hearing. AR 1115–39. ALJ Leppala issued his unfavorable decision on June 28, 2022. AR 1086–1105. Ms. Lujan timely filed her appeal to this Court on August 1, 2022. Doc. 1.[4]

The ALJ found that Ms. Lujan met the insured status requirements of the Social Security Act through December 31, 2013. AR 1092. At step one, the ALJ found that Ms. Lujan had not engaged in substantial, gainful activity since March 1, 2013, her alleged onset date. *Id*. At step two, the ALJ found that Ms. Lujan's spine disorders, vertigo, anxiety, and depression were severe impairments. *Id.* At step three, the ALJ found that none of Ms. Lujan's impairments, alone or in combination, met or medically equaled a Listing. AR 1092–94. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Lujan's RFC. AR 1095–1103. The ALJ found Ms. Lujan had the RFC to

> perform light work as defined in 20 CFR 404.1567(b) except the Claimant was capable of occasionally lifting and/or carrying 20 pounds, frequently lifting and/or carrying ten pounds, standing and/or walking for about six hours in an eight-hour

---

[4] A claimant has 60 days to file an appeal. The 60 days begins running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* AR 2.

>workday, and sitting for about six hours in an eight-hour workday, all with normal breaks.  She was further limited to occasionally climbing ramps or stairs, never climbing ladders, ropes, or scaffolds, occasionally stooping, kneeling, crouching, and crawling.  The Claimant must avoid all exposure to unprotected heights, dangerous machinery and moving machinery.  The Claimant could understand, carry out, and remember simple instructions and make commensurate work-related decisions, respond appropriately to supervision, coworkers, and work situations, deal with occasional changes in work setting, maintain concentration, persistence, and pace for up to and including two hours at a time with normal breaks throughout a normal workday.  She was limited to occasional interaction with coworkers, supervisors, and the general public.

AR 1095.

At step four, the ALJ concluded that Ms. Lujan was not capable of performing her past relevant work as an electronics inspector or customer service representative.  AR 1103.  At step five, the ALJ found that Ms. Lujan was able to perform work that existed in sufficient numbers in the national economy, including laundry sorter, garment bagger, and laundry folder.  AR 1104.  The ALJ thus found Ms. Lujan not disabled at step five.  AR 1105.

### IV.   Ms. Lujan's Claims

Ms. Lujan raises three main arguments for reversing and remanding this case:

1. The ALJ erred by discounting the opinions of CNP Dawson and Dr. Aamodt based on evidence that does not conflict with their opinions, *see* Doc. 15. at 5–13;
2. The ALJ erred by discounting the opinion of CNP Calzado based on evidence that does not conflict with his opinion, *see id.* at 13–17;
3. The ALJ erred by discounting the opinion of Dr. Baum because it was remote in time from the date last insured and based on evidence that does not conflict with his opinion, *see id.* at 17–27.

I find that the ALJ improperly assessed the opinions of CNP Dawson and Dr. Aamodt.  I will not address the other issues raised by Ms. Lujan because they may be affected by the Commissioner's treatment of this case on remand.  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

V.     Analysis

CNP Lynn Dawson and Dr. Denise Aamodt, both treating medical providers, provided opinions that found limitations substantively more restrictive than those contained in ALJ's Leppala's RFC findings. *Compare* AR 1101 *to* AR 1095. Specifically, both providers found, with minor differences between their opinions, that Ms. Lujan can stand and/or walk for less than two hours in an eight-hour workday; can sit for between two and four hours in an eight-hour work day; can lift or carry less than ten pounds; would likely be off task twenty percent or more of the workday; and would miss four or more days of work per month. *See* AR 1101, 839–41, 961–63. The ALJ found both opinions "somewhat persuasive, but not fully supported by records around the time of the [date last insured, December 31, 2013]." AR 1100–01.

The ALJ's analysis of these opinions reads as follows:

> The opinions of [CNP] Dawson and Dr. Aamodt seem to overstate the Claimant's pain and symptoms. They fail to explain why the Claimant would be limited to sitting, standing and/or walking for less than two hours in an eight-hour workday. The Claimant has Degenerative Disc Disease of the Lumbar spine (2F/252–253), with post-DLI MRI's showing lumbar Degenerative Joint Disease and Spinal Stenosis (2F/91). The record contains complaints of low back pain (2F/26), findings of positive Romberg sign (2F/24), positive straight leg raise (2F/31), and the exams show lumbar spasms (2F/31). The record shows some normal physical and mental exams prior to the date last insured (1F/42–43, 47–48; 2F/12). Some notes show antalgic gait (2F/31). Others show normal gait (2F/78). The Claimant has Vertigo (2F/25). Some exams have been unremarkable except for decreased balance (2F/24). This is inconsistent with standing and/or walking for less than two hours in an eight-hour workday. In addition, while the Claimant has spinal degeneration, nothing [in] the medical evidence shows an impairment of the neck, shoulders, elbows, hands or wrists that would limit the Claimant to lifting up to 10 pounds occasionally. Neither Ms. Dawson nor Dr. Aamodt provide adequate explanation to support this conclusion. The record shows no compromise of a nerve root or the cauda equina. It shows no need for any assistive device, which is inconsistent with . . . lifting and carrying no more than 10 pounds.

AR 1101–02. As the ALJ acknowledged, several of the cited records show that Ms. Lujan has long suffered from low back pain. More importantly, none of the cited records provide

6

substantial evidence for the ALJ's assessment of CNP Dawson's and Dr. Aamodt's opinions.[5]

The Commissioner correctly points out that the period at issue in this case is extremely limited, spanning only from March 31, 2013, until December 31, 2013. Doc. 20 at 5–6. Records outside this period still may provide relevant evidence, but only if they relate to the insured period. *White v. Berryhill*, 704 F. App'x 774, 779 (10th Cir. 2017). Of the records the ALJ cited, two are from 2012; two from 2013, and two from 2016.

Cited records from 2012 contain limited evidence probative of Ms. Lujan's physical limitations. An exam from March 2012, performed to assess a sinus and bronchial infection, contains only a brief physical exam targeted at Ms. Lujan's infection.[6] AR 352–57. This record appears to have no relevance to Ms. Lujan's standing, walking, and sitting limitations during the insured period. An exam from July 2012, performed to assess Ms. Lujan's complaint of dizziness with nausea, was more thorough and includes a finding of decreased balance and a positive Romberg test,[7] but no disturbance of gait.[8] AR 365–69. Dr. Aamodt diagnosed Ms. Lujan with vertigo, probably viral. AR 369. The ALJ did not explain why Ms. Lujan's vertigo and decreased balance was inconsistent with her medical providers' assessment that she could only walk or stand less than two hours in an eight-hour workday, nor is any there inconsistency

---

[5] Ms. Lujan also argues that the ALJ erred in his treatment of lifting limitations and in finding that part of Dr. Aamodt's opinion was not framed in vocational terms. Doc. 15 at 11–13. Because the ALJ erred in his assessment of sitting, standing, and walking limitations, I do not address these issues.

[6] This exam contains the ALJ's cite to 2F/12.

[7] "The Romberg sign is said to be positive in a patient who is able to stand with his feet placed together and eyes open but paradoxically sways or falls while closing his eyes." Jessica Forbes et al, Romberg Test (updated Aug. 13, 2023), StatPearls, National Center for Biotechnology Information (NCBI) Bookshelf, https://www.ncbi.nlm.nih.gov/books/NBK563187 (last visited 12/13/2023).

[8] This exam contains the ALJ's cites to 2F/24–25.

obvious. To the contrary, this medical record seems to support Dr. Aamodt's and CNP Dawson's assessments.

An exam record from 2013 is more revealing. An exam from September 5, 2013, assessed Ms. Lujan for a complaint of low back pain and gastroesophageal reflux disease.[9] AR 370–75. Dr. Aamodt noted that Ms. Lujan had, a week earlier, begun to suffer "insid[i]ous onset back pain"[10] which got "really bad" two days before this exam.[11] AR 374. This pain improved with walking but became more severe when sitting or standing. *Id.* Dr. Aamodt found that Ms. Lujan had a severe spasm in her lumbar area and antalgic gait. AR 375. This exam supports the opinions of CNP Dawson and Dr. Aamodt and does not provide substantial evidence supporting the ALJ's assessment.

The ALJ also cited an exam from September 10, 2013, which was an annual gynecological exam.[12] AR 332–36. This exam contains no complaints of low back pain. But because this exam was not oriented towards musculoskeletal issues, the exam is irrelevant and does not provide substantial evidence supporting the ALJ's assessment.

Finally, cited records from 2016 generally show that Ms. Lujan continued to suffer from

---

[9] This exam contains the ALJ's cites to 2F/26, 31.

[10] "An insidious disease is any disease that comes on slowly and does not have obvious symptoms at first." *Insidious*, A.D.A.M. Medical Encyclopedia (updated Apr. 27, 2023), https://medlineplus.gov/ency/article/002382.htm. This characterization of Ms. Lujan's back pain, together with notes that indicate she had previously dealt with chronic back pain and lumbosacral spondylosis, AR 332, 353–54, suggest that some degree of back pain may have predated September 2013.

[11] Dr. Aamodt's notes indicate that Ms. Lujan "ha[d] been seeing a different physician" for some part of the time between her visits in July 2012 and September 2013. AR 374. It does not appear that records for this physician are present in the administrative record.

[12] This exam contains the ALJ's cite to 1F/42–43, and accounts for the cite to 1F/47–48, which is an exact duplicate of the earlier record.

8

low back issues after September 2013.  An exam from March 2016 assessed Ms. Lujan for bronchitis, cough, loss of voice, sore throat, and "all over body pain."[13]  AR 418–23.  This exam did find that Ms. Lujan had normal gait, AR 422; however, given the date, the focus of the exam, and the countervailing evidence discussed below, this does not constitute substantial evidence that supports the ALJ's assessment.

An exam from May 2016 assessed Ms. Lujan for low back pain, among other complaints. AR 434–38.  Ms. Lujan came in with her husband to his appointment because of severe back pain that had been plaguing her for six months.  AR 437.  An MRI from five days earlier showed degenerative disc disease and spinal stenosis.[14]  Though this exam and imaging do not, given the date, independently indicate that Ms. Lujan suffered from back issues during 2013, they are part of a larger arc of back issues that are recorded in 2009, 2013, and 2016, and which Ms. Lujan testified affected her in 2013.  *See* AR 1123–27.  They are not inconsistent with the limitations found by Ms. Lujan's treating medical providers, and they do not constitute substantial evidence that supports the ALJ's assessment.

The Commissioner argues that the ALJ properly assessed CNP Dawson's and Dr. Aamodt's opinions because he "stat[ed] how persuasive he found them and how he assessed their supportability and consistency."  The Commissioner casts Ms. Lujan's arguments as "merely a guise" for an argument "that the ALJ should have interpreted the evidence in a manner more favorable to her."[15]  *Id*.  The Commissioner misapprehends the ALJ's duty in assessing medical

---

[13] This exam contains the ALJ's cite to 2F/78.

[14] This MRI was cited by the ALJ as 2F/252–53.  The diagnosis of spinal stenosis was cited by the ALJ as 2F/91.

[15] The Commissioner also argues that the length of CNP Dawson's treating relationship with Ms. Lujan, which start in July 2016, "had implications on the supportability of [her] opinion . . . ."  Doc. 20 at 9.  While this is a relevant consideration under the new regulations and was noted

opinions. It is not enough for an ALJ to simply cite record evidence and make a totemic reference to inconsistency: the ALJ's duty is to articulate with specificity *how* record evidence supports or conflicts with a medical opinion. *See* 20 C.F.R. § 404.1520c(b)(2) ("we will explain how we considered the supportability and consistency factors"); *see also Watkins*, 350 F.3d at 1300 (the ALJ's decision "must be sufficiently specific to make clear" the reasons for the weight given to a medical opinion). In cases where the record evidence plainly supports the ALJ's assessment, the duty of articulation may be relaxed. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where . . . we can follow the adjudicator's reasoning . . . merely technical omissions in the ALJ's reasoning do not dictate reversal."). In cases like this one—where the cited evidence does not obviously support the ALJ's assessment—the ALJ must articulate how otherwise ambiguous evidence provides substantial evidence for his or her conclusion. As detailed above, it is not apparent that any of the evidence cited by ALJ Leppala provides substantial evidence for his assessment of CNP Dawson and Dr. Aamodt's opinions. His conclusory statement about inconsistency does not elucidate why this evidence is, in fact, inconsistent.

The ALJ's failure to support his assessment of CNP Dawson's and Dr. Aamodt's opinions with substantial evidence is harmful error. ALJ Leppala found that Ms. Lujan had the RFC to sit for six hours and to stand or walk for six hours in an eight-hour workday. AR 1095. In contrast, CNP Dawson found that Ms. Lujan could sit for four hours and stand or walk for less than two hours in an eight-hour workday; Dr. Aamodt found even more restrictive limitations.

---

generally by the ALJ, there is no indication that the ALJ considered this fact in assessing CNP Dawson's opinion. *See* AR 1101–02; *Haga v. Astrue*, 482 F.3d 1205, 1207–08 (10th Cir. 2007) (the court "may not create or adopt post hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself").